We will hear argument next today in 13-550, Tybill v. Edison Int'l. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. This Court granted certiorari to decide whether ERISA's statute of limitations bars claims for breaches of fiduciary duty regarding investment options that were added to a plan more than six years before the suit was filed. The answer is no. The statute does not bar such claims for three reasons. First, ERISA's fiduciary duties include monitoring existing investment options and removing imprudent ones. Second, each failure to review and remove an imprudent investment option starts a new statute of limitations. One of the things that I was looking for, Mr. Frederick, in the record is some evidence as to what exactly that monitoring entails. I took your brother's responsive brief as saying it can't be a complete due diligence that you do when you buy something, otherwise the funds would grind to a halt. So where in the record is there some proof of what the monitoring or what the level of monitoring should have been and what the breach was here? Justice Sotomayor, we were precluded at summary judgment from making the argument that the continued imprudence of maintaining these investment options was a breach of fiduciary duty. The district court's summary judgment order, and I would direct the Court to Petition Appendix 262 to 263, barred us from bringing imprudence claims as to the funds added in 1999. At page 180 in the Petition Appendix, the district court explained that applying a circuit precedent known as Phillips, the plaintiffs had to prove that there was a change in circumstances significant enough to make the continued investment in that investment option an imprudent one. So the theory that we were precluded by the summary judgment order from advancing was the theory that keeping this investment option available during this time period was imprudent. Scalia. But if we agree that there had to be some significant event or change that would trigger the need to reexamine this investment, then we would affirm? That's correct. What happened at trial was that after the summary judgment order, the judge barely opened the door to say, if, plaintiffs, you can show that there was a significant enough change, I'll allow you to prove that there was – that it was equivalent to the new selection of an investment option. And we lost on that issue. As a factual matter, that was affirmed on appeal. And we lost on that issue. So, Mr. Sotomayor, is it true that the SCC is not required to monitor the period every year as though it was a new purchase? No. Our position is that the periodic duty to monitor requires at least some familiarity with the filings of that particular fund and an awareness of what the expenses and performance of it are. This expense ratio information, Justice Scalia, is readily available on the Internet. It is readily available with a phone call or two. It is part of the SEC filings. And unlike an initial review where a fund manager would look at thousands of mutual funds in the industry, all that we're saying here is that the trustee should have looked at what was publicly available information about the very mutual funds that were part of this particular plan. Sotomayor, you also said, did you not, that there was this committee that met periodically to review investments. I think you said they met quarterly. Correct. And that there had been, as a result of those quarterly reviews, changes. That's correct. In investments. That's correct. And, in fact, the district court found that as to a fund that was being reviewed in 2003, they discovered that there were institutional shares available and they immediately switched to the lower-cost institutional shares. But the district court further found that as to the other funds that were added in 2002, the trustees had never made an inquiry about the availability of lower-cost institutional funds. Sotomayor, that was one of the questions I had in my own mind. Did you ever argue below that once they found out about the institutional funds, that that was a changed circumstance? Well, it was only as to the one fund that had been changed, but the court recalled in its summary judgment order on page 262, it said you're barred from bringing claims of imprudence as to the funds added in 1999. Unless they were changed circumstances. Unless they were significant changes, so significant, and this was the holding of the prior Ninth Circuit and the Fourth Circuit and Eleventh Circuit precedents, that would be a tantamount to adding a new fund. So just simply because there are existing institutional share funds for mutual funds out there was not deemed by the district court to meet that standard. And in their post-trial brief, and this is at the docket at page 3 — docket number 381 at page 13, which we quote in our reply brief, Edison said, we had gone beyond what the district court summary judgment order was, and therefore, we were precluded from making arguments about the imprudence of the 1999 funds. If we forget what happened at earlier stages of this litigation, and I think that the parties' positions have clarified, let me put it that way, as this has progressed, on what point of law do you and Mr. Hacker now disagree? I'm not sure you disagree. You certainly do not disagree about what the answer to the question presented is. We both say no. It is not categorically barred. So on what point of law do you disagree? Frederick, I think that the point of law that we disagree, and I would urge you, Justice Alito, to ask that question to Mr. Hacker, because their brief is somewhat schizophrenic. At the beginning, they say no, and at the end, they say yes. They ask you to affirm the Ninth Circuit on the merits, and the Ninth Circuit held that there was a significant change of circumstances. Alito, forget me, but what do you think? And that is the point, Justice Alito, where I think we disagree. We do not believe that ERISA's statutory standard, which is at 1104a1b, and it says that the standard by statute is what a reasonable investor would do under the circumstances then prevailing, would require the introduction of an added burden to overcome, which is that there had been significant change circumstances since the initial investment. That look-back within the limitations period looks at whether or not the investment option is an imprudent one. And it doesn't matter whether there had been significant or insignificant change circumstances since the initial option. And let me point to you the fact that the district court here adopted this principle in this rule to lead to really absurd results. The Ninth Circuit was not able to do that. Alito, I will ask Mr. Hacker, but I you understand him to take the position that unless there are some changed circumstances, a trustee can simply make no inquiry about the continued prudence of assets purchased in the past. That's actually the point. You just sit on them. You don't even think about whether this is still a good investment or not. That you think that's his position? Well, Justice Alito, whether that's his position anymore is of no moment to me. That's the position of the Fourth Circuit in the David case, the Eleventh Circuit in the Fuller case, the Ninth Circuit in this case applying the Phillips case. So those are the cases that we urged as conflicts that should be resolved in favor of a statutory construction that says the duty to monitor and remove imprudent investments is part of ERISA's fiduciary duty. And if I could just ask again, Mr. Frederick, what that duty includes in addition to the changed circumstances situation? In other words, just on a continuing basis, and tell me in a way that includes this case but isn't limited to this case, on a continuing basis, what is a trustee supposed to do under the prudent person standard? Sure. Three things. One, look at the performance on a regular basis, a periodic basis. Number two, look at the expenses and determine, is there a cheaper way to get the same investment for less money that's coming out of the beneficiary's assets? Number three, has there been an alteration in the management such that one ought to look further and more deeply into it? And at the very least, Justice Kagan, one would think you'd look at the SEC filings for that mutual fund to determine whether or not there had been something that would require determination of imprudence. And that's not heavy lifting. The district court here found that as to the three funds added in 2002, the trustee had never even called the mutual fund to say, hey, we've got $3 billion in assets. Do you think we could get a better rate for the expenses charged to the beneficiaries? They never even asked the question. So at the very least, you could write an opinion that says there's a triable issue of fact as to whether or not the burden was so great on the fiduciary that it couldn't do the simple thing that the district court already found as a matter of fact had been breached with respect to the 2002 funds. Now, with respect to one of the 2002 funds, there were two funds that were still being held by the plan at the time of judgment. One was added in 2002, the other was added in 1999. The district court, as part of its order, post-trial order, ordered Edison to change the 2002 fund. At that time, the retail share expense ratio was 24 percent higher than the institutional, and the district court ordered that that be changed so that the institutional share class be available. As to what the 99 fund, the Allianz Capital Appreciation Fund, the district court didn't do that, even though the expense ratio was 37 percent higher from the retail share to the institutional share. Kagan. I would think, Mr. Frederick, tell me if you disagree with this, I would think that it's possible that a decision to buy one of these funds with high expenses would be imprudent in the first place, and yet it might be prudent not to switch midstream. In other words, if there are costs to switching midstream, you have to tell everybody about it. I'm not sure what the costs are. But is it possible that a decision that was imprudent in the first place to buy, that it nonetheless could be true that a hold decision is prudent? It's theoretically possible, and in the world of Supreme Court hypotheticals, Justice Kagan, maybe there is a situation in which that would make sense. In the real world of investing, what we're talking about here is economies of scale. The only difference between the retail share class and the institutional share class is that the institutional shares have more money invested in the exact same assets. Breyer. Do you think both parties agree that there is a duty, a fiduciary duty, every so often and that's I don't know how often, to do some kind of prudence review of the investments you still hold? You agree to that. That's your point. That's correct. So I should ask the other side if they agree to it. That's correct. If they do agree to that, my guess is that they will possibly, from what they've read, is they're going to start arguing, but the Ninth Circuit never held to the contrary. They're going to say, oh, yeah, but it wasn't clearly put to them. The more I look into it, I'm not so sure it was so clearly put, but I can't quite say whether it was waived either, and so what should we do about that? Should we – I'm pretty sure that they didn't raise this as an objection in their reply brief on NISCORT, in the cert petition. Justice Breyer, this has been waived in six different briefs that the other side has filed. You say they waived their right to make that. Okay. That's correct. Let me assume you're right about that. Now, still then, what do I do? Because even if they waive this argument, there is a problem with me suddenly or any of us describing this fiduciary duty, the nature of it, whether it's violated here or not, when there is no real lower court opinion. There is. That's – that's incorrect, Justice Breyer. That assumption is not correct. If you look at Petition Appendix pages 18 and 19, there are two passages where the law is wrong, and we ask you to reverse and to disavow those two passages. Okay. So the opinion, in your view, could be just this. Here are the two passages. They said you don't have a prudence obligation to review unless there are changes. They are wrong about that. There is a prudence review. Send it back. That's correct. And allow the district court to have a trial. We lost summary judgment. Well, I don't want to start. I mean, they might find there isn't enough to get to the trial. I don't know about the law. Right. But the two passages start midway down page 18 of the Petition Appendix, where the Court said, "...characterizing the mere continued offering of a plan option without more as a subsequent breach would render the statute of limitation meaningless." That's not – that does not take into account the continuing duty that the fiduciary has to periodically review. I'm sure there is some such duty, but I am – life is too short. You're going to ask every Federal district court not only to determine whether a particular purchase was sensible or not, but to say year by year whether you've done a careful enough review. I mean, I just – I just don't think courts are capable of doing that. The other side offers some help by saying if there's a changed circumstance, you've got to do it. And you yourself say, oh, well, this is a very special case, because it was obvious any fool would know that there are two classes of these stocks, and the one class has a much cheaper expense to holding it. Why not say that, where there's been a change of circumstance, or the imprudence of holding it is obvious? Well, that's putting barnacles on the statute Congress didn't put, Justice Scalia. And if you take the 53 million Americans that rely on 401K programs for their retirement assets, and you tell them year after year after year you have to pay expense ratios that are much higher than they should, you are depleting retirees' assets in a way Congress did not envision in the statute. Expense ratio is handled, is handled in what I propose, where it's obvious on its face that you continue the investment in the same company, but you just get a different class of stock and you get lower charges. Well, I don't think that's obvious. Justice Scalia, there's no basis in the statutory language for that rule. If I could save the balance of my time. Roberts. Thank you, counsel. Mr. Harsky. Mr. Chief Justice, and may it please the Court, I think the Court's questions today recognize that there are ultimately two issues that will need to be resolved in this case. Only one of them, though, is before the Court in the question presented. And those two issues are, first, whether this claim for ongoing monitoring and failure to switch the funds is timely. And then the second issue is, is there a breach of fiduciary duty within the limitations period? As Justice Kagan asked, what does the monitoring duty entail, et cetera, et cetera. And although I'm happy to answer questions on that second issue, I just want to make the Court aware that the reason it's not briefed in any kind of extensive way is because it's not the question on which the Court granted cert. If I can just turn to the first question to look at the nature of Petitioner's claims. Scalia That's fine. Would you just give us a hint as to whether the government agrees with Mr. Frederick? Yes. I mean, we filed a brief in support of him. Scalia So you agree entirely that there's no particular test? Not obviousness or not change of circumstances? Let me be as concrete as possible, and I think there's really two answers to your question. Okay. The first is the legal standard that's in ERISA, which, as the Court recognized in the fifth third case, is one that depends on what a prudent investor would do under the circumstances then prevailing. That's the legal test. But then there's a question, this is the second part, about how you would apply that legal test to a claim of imprudent ongoing monitoring. And I do think that depends on the circumstances, but I'd like to give the Court four data points. The first is that the duty for ongoing monitoring is not the same as what you would do when initially putting the funds in place. The second is, is that what typically happens out in the world is that after the funds are put in place, there is — there are benchmarks set, and in this case, there were the investment criteria set, performance, expense ratios, et cetera, that would be revisited at a periodic basis. I think, as Justice Ginsburg pointed out, there are quarterly meetings in this case to look at those investment criteria, and those include performance and expenses. The third thing is, in terms of how you prove this or how you establish it, there's not a checklist that can be checked in every case. The way that this is litigated typically, and what happened in this case, is that an expert is on the stand and says, here's what I would do as a prudent investor under these circumstances. But then the fourth data point, which I think is actually a very important one, is that the ongoing monitoring duty is not limited to circumstances in which the fund changed so much that it's like a new fund is being put in place. You have a duty to look on a periodic basis, and really, how are you going to know if there have been changes unless you looked? And just to make it clear, the Ninth Circuit did not say, well, whether you should make a change or not depends on whether the circumstances changed. The Ninth Circuit's changed circumstances was fundamental to its limitations ruling. They looked at the limitations period as running only from the initial time a new fund is put in place. And so what this changed circumstances had to do with is whether there was something that changed about the fund that made it like a new fund being put in place. And just one other point, the argument that was being made below by Respondents and it's not clear to me to the extent to which they continue to believe it, is that you have six years from when the new fund is put in place and that's it. After that, unless the fund changes so much that it's like a new fund, these funds are basically insulated forever from any scrutiny, which is a problem for the reason that Mr. Frederick pointed out. And really, one of the reasons the Department of Labor is here today is you're talking about a long time horizon. And to say that people's investments can, the value of their funds can really be decreased in that way without any scrutiny is unfair. But I'm also happy to answer questions that the Court has. Breyer. No, no, no. You started with the first. What was the first thing? Remember, you said that's the second question. Oh, yes. The first question. That you were not going to address. That's when you were going to address. Exactly. I want to hear the one you were going to address. Yes, yes. Well, the question that was, to make sure I get to this, of course, the question that was teed up for the Court was, is there, is the fact that the funds were put in place outside of the limitations, period, something that would preclude you from bringing a case about what happened during the limitations, period? And that's how we listed, the question presented was listed in the petition. It was the question that was presented also in the op. It's the question that we presented. No, the fact that the selection was, happened more than six years ago does not preclude you from bringing a monitoring claim. Those are different. You're not challenging the initial selection anymore. You're challenging the ongoing monitoring. But what the Ninth Circuit did was really limit the claim to, related to the initial selection. And just to be clear about the And that's because they have this change circumstance rule where it has, the change can only be something like a new fund. Yes. They understood that and they described that in the record to be like a new fund. And I just, one other point I would like to address is with respect to this. Excuse me. It seems to me that you're misdescribing them when you say that they said it's only the purchase that can be subject to scrutiny. I think they did say that the holding can be subject to scrutiny as well, so long as there has been some change in circumstance. And you can say that that, you know, that refers you back to a new purchase standard, but it's still, they say that within that period you can bring a suit. Right. If it is the equivalent, the change circumstances are the equivalent of bringing a new fund. The reason that I was trying to clarify that is because I think a person, an ordinary person could just be talking and say, well, should I make changes to the fund or not? It depends on if circumstances change. But that's not, the Ninth Circuit wasn't addressing that merits question of whether they had breached the duty of prudence or they hadn't breached the duty of prudence. They were limiting the claim on statute of limitations grounds, because it either had to be a fund, a new fund being put in place, or change circumstances that made it like a new fund. So that's what I meant to say, and hopefully we're clear about that. I guess if I could just say on the first question presented, the one that we think is before the Court, just to make clear, because there is disagreement in the circuits about this, that we essentially want the Court to hold three things. The first is that plaintiffs can bring a claim for imprudent monitoring and retention of funds based on what happened within the limitations period. That's timely under the statute. The second is that the Ninth Circuit was wrong to say that the only way the claim can be timely is either if it's from the time of a new fund or based on this change circumstances that make it like a new fund, because there is an ongoing duty of prudence that runs for the fiduciaries under the statute. And that's really why we got into this case at the court of appeals stage and why we're here now, is that ERISA has ongoing fiduciary duties, and both the courts below and Respondents were arguing against that and finding against that below. And then the third thing is that we think that the Court should remand for consideration of the merits of this. And I know that the Court has questions about the merits, because you just wonder what would need to be done for the monitoring, whatever else. But that's not a claim that was really addressed at all below. It wasn't something that we briefed in any kind of detailed way before this Court or that was briefed below, because these claims were really cut off at the outset. So although the Court could provide some general guidance, it is, after all, a statutory standard. So if I could just understand that, essentially you want us to say, look, there is this prudent person standard, it applies throughout to monitoring as well as to the original purchase, but then we're not really going to tell you what that prudent person standard is, that we will instead let the lower courts deal with that in the     And that's what we're going to do in considering this case. Is that what you want? Yes, that the courts would need to depend on the facts and circumstances to figure out under the facts and circumstances whether there was a breach of the duty of what, based on what happened within the limitations period. Well, you want us to say that whatever it is, it isn't solely whether there has been a change in circumstances so extreme as to amount to purchasing a new stock. Yes, that's right, and that's the trust law source as we say that. You know, you have a duty to look from time to time. You can't just set the funds and hold them and forget about them. And the duty to look isn't triggered by something external that's like a new fund being put in place. You just you have a duty to look. And it might depend how often you look might depend on the circumstances and how deep you look might depend on the circumstances, but you have a duty to look. But when Mr. Frederick said before, he said something like anything, any periodic review, you're going to look at the returns, you're going to look at the expenses, and you're going to look to see whether there is a change in the, you know, basic nature of the company or something. You agree with all of that, is that right? Yeah, I think that's fairly typical, and it actually was, those were the benchmarks that were set by the Investment Committee in this case, that they had five investment criteria, and the first of them, the first three of them were you always look at performance, you always look at the expense ratio, and you look at the management of the fund. And actually, I think that follows from ERISA, that you need to look at both performance and expense ratio on a regular basis, because the first fiduciary duty that's listed in Section 1104 is to act for the exclusive purpose of paying benefits and defraying the reasonable expenses of the fund. ERISA itself tells you to look at expenses. If the Court has no further questions, we would urge you to reverse and remand for consideration of the merits. Thank you, counsel. Mr. Hacker. Mr. Chief Justice, and may it please the Court, I agree to be sure that there are no serious differences between the parties with respect to the core legal question on which this Court granted review. For that reason, it is our primary submission that the Court ought to dismiss the writ as improvidently granted, rather than. I don't know what that means. It seems to me when I read your brief that your brief is supporting the Ninth Circuit's position, which is that it's only when significant changes occurs. We are not supporting that position, because that's not the Ninth Circuit's position. I don't think the opinion can reasonably read that way, because it wasn't the issue before the Court. The issue before the Ninth Circuit was the same issue that Petitioners raised or that the district court addressed, which is that there's no continuing violation theory under ERISA, i.e., you cannot bring a claim that addresses the initial selection and says that was imprudent. The district court said more than that. It did say there has to be a change in circumstances. Mr. Frederick told us, and you can tell us if he was wrong, that they did not have any opportunity in the district court to say there should be these periodic monitorings, because the court said after the initial investment in the fund, first when you buy the plan, after that, there's no obligation other than if there's changed circumstances, then you have to take another look. That's what the district court, as I read it, said, and that hemmed in these plaintiffs, and they couldn't say, we're talking not about a continuing violation, ongoing monitoring, not necessarily triggered by a change in circumstances. With all due respect, Justice Ginsburg, the district court opinion does not say that. It cites the Phillips case on page 180, describes the holding of Phillips, and it says in Phillips, this is talking about Phillips, not this case, it says in Phillips, the court rejected the notion that after the first alleged breach of fiduciary duty, any failure to rectify the breach constituted another discrete breach. Page 180 of the petition appendix. The court, it goes on to say the court said that although the trustee's conduct could be viewed as a series of breaches, the statute of limitations did not begin to renew because each breach was of the same character. It's referring back to the failure to rectify. Nowhere in that passage, and nowhere anywhere in the district court summary judgment opinion or at trial is there a hint or whisper of a suggestion that the plaintiffs would be prohibited as a matter of law from trying a claim that says we want to challenge the monitoring process during the repose period, and here's the problems that we have with your monitoring process, here's all the flaws we want to identify, here's the things we think a prudent fiduciary should have done, and here's the things you didn't do. Ginsburg. Mr. Frederick cited Petition Appendix page 18 and 19. Right. So that is a statement of the Ninth Circuit law that Petitioners think is incorrect and that they would like to have this court correct. A couple of points on that one, if I may, Your Honor. First of all, the passage that Mr. Frederick pointed to on page 18 says, characterizing the mere continued offering of a plan option, and I agree with him, the key words are the next two that follow, without more, as a subsequent breach would render the statute meaningless, et cetera, et cetera. The without more is clearly referring to establishing a breach of the duty to monitor in that process. If you don't come into court and show that there was a problem or flaw in the monitoring process, you can't win a claim, a challenge to the monitoring process. What you don't get to do, the Ninth Circuit is responding to the argument they made, which was that we want to come into court and say we established that the fund was initially selected through an imprudent process, and therefore the fund was initially imprudent, and as long as it stayed in the plan, it was a continuing violation, and we don't have to talk about the monitoring process. And the reason the reason. Alito On what point of law do you and Mr. Frederick now disagree? We certainly don't disagree on the question presented. We disagree, I think, and it became clear today with a couple of points that Mr. Frederick made. First of all, and this I think was in response to your question, Mr. Frederick said that the continuing duty to monitor, and to go back to my point about the dismissal of the writ, I would be surprised if this Court wanted to be the first to elaborate what the duty to monitor looks like on an absent record like this one. But Mr. Frederick wants you to say that the duty to monitor includes a continuing duty to look for cheaper funds. With respect to a fund like this, when there's 40 funds in the lineup, his theory is that on a periodic basis, whether it's daily or monthly or quarterly or annually, every time you look at the fund, you ought to be looking at whether or not there is a cheaper option. Kagan No, I don't think he's saying that. Alito I mean at a higher level of abstraction than that, not as applied, not the particular things that need to be done. He says in his reply brief, "...no precise rule dictates how often a fiduciary must review the portfolio or how detailed periodic reviews must be. Rather, as with trust administration generally, the duty to monitor is subject to the reasonable person's standard. That is, the fiduciary must engage in the kind of review that a reasonable, prudent fiduciary would conduct under the circumstances." Do you disagree with any of that? Roberts Not aware of it. Kagan Well, Mr. Hacker, here's what you say. Here's what you say in your brief. What you say in your brief is after the initial selection, the fiduciary may conduct much less intensive periodic reviews, monitoring only, monitoring only for significant changes in the value and risks of the investments. That presents a very different view. Hacker That comes straight out of trust law, because that is what the typical duty to monitor is what you're looking for are significant changes. Because as Mr. Frederick says, and I fully agree, how else, I think it was Ms. Zaharsky actually, how else would you know if there have been changes if you're not looking for them? We are not suggesting, and I think Ms. Zaharsky was wrong about this, we aren't saying, neither court below said in any respect that. Kagan As I see the difference, you say you're monitoring only for significant changes in the value and risks of the investment, and they're saying, look, you have this periodic duty, one of the things you're looking for is significant changes, but you also, on an ongoing basis, just like ordinary people do with their own investment portfolio, you look at the return, you look at the expense, in something like this, it's not like we're scouring the whole universe for cheaper funds. It's like we realize, oh, look, it's the exact same fund with cheaper expenses. In something like this, you make the change. Hacker Right. There's three things I would say about that. First of all, there was a trial on that. Contrary to everything you just heard, there was a trial on whether or not they could and should, the fiduciaries could and should have switched the share classes. The Court went on and on, took over the questioning to ask whether or not that should have happened here, and there was evidence in the record as to why it didn't happen here, and I can go into that evidence, and it was in the letter I provided to the Court last week, to show that everybody understood that that was a claim at stake, and what happened was their expert ultimately said, I don't think Director would not endorse the proposition that during the routine, periodic monitoring that everybody agreed our fiduciaries conducted, that they would have caught this kind of problem. And that's the second point. The reason is, you're not looking in the periodic monitoring to see whether each of the funds in the lineup is the cheapest one available. Now, they say it looks easy here because it's just a different share class in the same fund, but that's actually a different investment. In order to switch, you don't just press a button and switch into the institutional share class. You have to sell the institutional, the retail share class, buy new shares in the retail share class, make all of the changes with respect to that kind of change, with respect to each participant who has already invested in the retail share class. And the evidence at trial, uncontradicted by plaintiffs and their expert, was that that kind of change causes disruptions that employees don't like, which is why the monitoring process generally is limited to looking for changes. Now, really, are you saying, what kind of disruption could be worth, on an ongoing basis, for people who have invested in funds for 30 and 40 years, and where there's a significant difference in fees, what kind of disruption could be worth the price of that? Well, but the problem is, and this is the third point I was going to make, is why don't you answer that one? Because it's not just, it's oversimplifying the kind of disruption we're talking about. It would be easy for any one person if it were simple as, oh, I understand my investment is now cheaper today. But that's not how it works. Employees don't, the evidence, there's evidence on this. I'm not just making this up. There's record evidence that at the cost of removing and switching, there were costs that the fiduciaries cared about. But the key point is to think about this. If you're selling the institution, the retail share class, to move into the retail share class, at that point, and this is Mr. Frederick's own argument, you're supposed to be looking for cheaper options, not just necessarily the institutional share class. You would have an obligation. If we just switched into the institutional share class, and there was one other option anywhere in the market that was a comparable investment but less expensive, I assure you Mr. Schlichter and his firm would have showed up the next day with a lawsuit suing us for breach of the fiduciary duty for failing to shift into the cheaper option that was available when all the fiduciaries switched to the institutional share class. Breyer, you're talking about the nature of the fiduciary's duty to continuously monitor, isn't that your subject? I'd like before doing that, since you seem to agree there is some such duty, but you may disagree of what it consists of, and nobody so far in the lower courts has really gone into that, probably we should send it back on that, say they agree about that. But then you want it dismissed because you say that that issue wasn't fairly raised. All right. So I look at the cert petitions, and in their cert petition on page 18, 19, 20, etc., it seems to me pretty clear that they are saying the mistake in the Ninth Circuit was ignoring the continuing nature of a trustee's duty under ERISA to review plan investments and eliminate imprudent ones. They are quoting the Seventh Circuit. So when I read that, they are making the argument pretty clearly, that there is this nature, that there is this duty, and they say the Ninth Circuit didn't hold that. The Ninth Circuit thought it existed only when there was a change. So I look to your reply to that. You do not to me to – I can't find a place in your reply, in your reply to their cert petition in either, where you say they have an incorrect assumption here because you should dismiss this case and never hear it because that isn't what the Ninth Circuit said. Rather, the Ninth Circuit said a different thing. Now, where do you say that? I couldn't find it, and if you didn't say it, it seems to me that you have waived, in a sense, the argument that they have waived, in a different sense. All right. You see the point. But we definitely argued and pointed out, which is on the face of the opinion true, which is the next paragraph of the opinion after the without more cite, that the Court recognized a continuing duty. It acknowledged the existence of a continuing duty, and this is in our cert opposition, and explicitly says, therefore, the district court was correct to allow them to assert a changed circumstance theory. That's clearly in the cert opposition, pages 8 through 10 of this claim. Breyer, what you say, I have this that you said. The Ninth Circuit held that a statute, that a claim challenging the selection of mutual funds, da, da, da, is barred by the 6-year statute if the claim challenges funds that were selected more than 6 years before, and the claim does not allege that any materially new circumstances arose within the previous 6 years. So that sounds like the very characterization of the Ninth Circuit that they are saying was mistaken. Right. So it seems as if you are agreeing that the Ninth Circuit made a mistake, you are agreeing they should have put this in, and I guess you also agreed that in their brief in the Ninth Circuit, they did say Edison had a continuing duty to ensure that each of the plan's investments was and remained prudent, was and remained prudent within the 6 years, et cetera. So they raised it in the Ninth Circuit. You agree the Ninth Circuit made the wrong holding, and you agree what the right holding is. All right. So what's the argument we should dismiss it? Well, there's a few problems in that, but most of them are just quibbles, okay? First of all, the description you read from the certain opposition is describing accurately what the Ninth Circuit said with respect to what it was they were arguing. Remember, the changed circumstances theory was introduced by the plaintiff's own expert. When it came into the trial, the judge expressed puzzlement as to why the plaintiffs were talking about changed circumstances, because he thought their claim was going to be what you hear it is today. And then the expert disavowed it. They thought that was the circuit law, that they had to show changed circumstance, otherwise they wouldn't have a monitoring claim. There was no circuit law like that. There was no precedent saying that. And, Dr. --" and this was not plaintiff's theory. Plaintiff specifically said, we have a broader theory. It appears on page 33 of Volume I, the first morning of the trial, Nelson Wolfe, counsel for plaintiffs, explains that our theory is not limited to changed circumstances. That was Dr. Pomerantz's own theory, and the Court ultimately says, I will hold the plaintiffs to whatever Dr. Pomerantz said. But there's an even clearer answer to this, which is we know that the plaintiffs did not think themselves limited to proof of changed circumstances, because half of the trial, fully half of the trial, was a challenge to the money market fund, one of the funds at issue below. And the argument, and the only argument plaintiffs made with respect to the money market fund was that it was too expensive. The money market fund was added in 1999, and it was 18 basis points were paid. And it was paid to the record keeper, the service provider of the money market fund. And throughout the period, the reposed period, the money market fund stayed in the lineup. And the plaintiffs' only argument at trial, which they were allowed to make, the Court didn't suggest there was any limit, and Respondents didn't suggest any limit, was that it stayed too expensive. Breyer, never pointed any changed circumstances. Breyer, about this result, two paragraphs. The parties agreed that there is this ongoing monitoring, et cetera. The Ninth Circuit did say changed circumstances. It's wrong about that. Nobody here in the reply brief to cert really raised the question of whether it had been properly raised. And therefore, we remand the case to apply the law insofar as it's in the proper procedure to do it, something like that. I don't disagree with most of that. The only point I would make is I don't think there's a reason to remand. I do think the Ninth Circuit, in referring to the continuing, whenever you hear continuing duty, that doesn't mean they raised the argument. Their point below, quite different from what you hear in this Court today, their point below was because there's a continuing duty, it follows that whenever there's a prudent fund in the plan on day one, it's a continuing violation as long as it stays  Kagan you don't? Kagan Mr. Hacker, here is what you argued to the Ninth Circuit. What you argued to the Ninth Circuit, ERISA's 6-year limitations period bars challenges to funds added to the plan more than 6 years before this action was filed. Then you got exactly what you wanted from the Ninth Circuit, with the single exception that the Ninth Circuit added the fact that, by the way, that doesn't apply to changed circumstances. Then you described to this Court what you got from the Ninth Circuit in the terms that Justice Breyer said, which was exactly, that the only kind of monitoring claim available to a plaintiff is when there are changed circumstances. And then you file a brief in which you sometimes say that the Ninth Circuit is completely right, and then you sometimes purport to be agreeing that the Ninth Circuit was wrong. Now, to me, that's raising a lot of dust for something that is pretty clearly what the Ninth Circuit said, what you asked for, and what is wrong. Hacker The last point I was going to make, which I didn't get a chance to get back to with Justice Breyer, was we do think it's appropriate. If you don't like the language that the Ninth Circuit used, if you don't read it the way I do and think the Ninth Circuit is announcing a categorical rule that says nobody can proceed on a monitoring challenge unless they prove changed circumstances, that's not the argument we believe is the correct argument, and we do not argue that that's required anywhere in our brief. If you think that's it, but if you disagree with that.  Page 22, it's in your summary of the argument. The fiduciary may conduct much less intensive periodic reviews, monitoring only for significant changes. Hacker That's during the periodic monitoring process, but it can still be a breach. We're not resisting the point Justice Scalia raised, that if the plaintiff thinks that something was so galactically imprudent on its face that any proper, reasonably prudent review process would identify and remove the fund, then that can proceed, or at least it's not barred by the statute of repose. That's a permissible-type claim because, of course, it's an argument that the — there's been a breach of the duty of prudence during the repose period. It is true, as a general matter, that that is not pulled out of whole cloth. That's straight from trust law, that as a general matter, what you're looking for in the periodic review process is changed circumstances, and that goes back to my earlier point, that it cannot be. It cannot be, and you should not write in whatever opinion you write, you should not endorse Mr. Frederick's proposition that during the periodic review process, you actually do have a duty to constantly look and scour the market for cheaper investment options. Kennedy, you certainly do, if that's what a prudent trustee would do. And there's no evidence in all of the trust, none of the trust law sources, zero of them, that either side's site suggests that that's what a prudent fiduciary would do. If that was an argument to be made that could have been made below, their expert would have made it because there's nothing in the district court's summary judgment opinion that precludes it. And we know from the way they litigated the money market fund, which was only a challenge to the continuing high fees, allegedly high fees, with absolutely no argument by them or suggestion that they needed to show changed circumstances. The whole trial was about whether or not they could prove a breach of the duty to monitor. We accept that a breach of a challenge to the duty to monitor can proceed, excuse me, an argument that the duty to monitor was breached can proceed. But, and here's the key point that I think Mr. Frederick is overlooking, it has to be a challenge to the duty to monitor. It has to challenge the monitoring process itself. It cannot be simply because of the continuing duty that it follows that you have a per se duty to pull out a fund that should not have been selected initially. This is a point Justice Kagan made. She's absolutely right about that. Ginsburg-Miller The changed circumstances seems to have confused everybody. The Ninth Circuit used it, you used it repeatedly, this Court should X that out, and then you're in perfect harmony. And that was the point I was getting to earlier. I do agree that if the Court is uncomfortable with the language used in the Ninth Circuit, it obviously doesn't have to endorse that language. The Court can write whatever opinion it believes is appropriate. But we think the question really is, as a court of review, reviewing the judgment, the question is, is the judgment incorrect? And there's no basis for challenging the district court judgment, and there's no basis for challenging the Ninth Circuit's judgment affirming that judgment. And the analysis, what's going on in the Ninth Circuit opinion, again, if you don't like the language or think it's susceptible to misunderstanding, the point the Ninth Circuit was simply making is one I think this Court should endorse, which is that there is no continuing violations theory. A plaintiff has to do more than simply say there was an imprudent fund at one day and because you have a continuing duty, you therefore had to remove it. What a plaintiff in that situation has to show is a violation, a breach of the continuing duty to monitor. So then the case becomes about what the scope of that duty is. And I want to make two points where I do think there's some disagreement between us and Mr. Frederick on that. The first is that, and I agree with what Ms. Zaharsky said, it's absolutely true that there's a fundamental and major difference between the process for selecting funds initially and the process for monitoring existing funds. When you're selecting funds, you're going through this comprehensive review of the market. When you're monitoring them, you're basically looking for changed circumstances. That's what you're reviewing for. And the reason for that is the enormous disruption both to the fiduciaries, the enormous work a fiduciary would have to do if literally every month or literally every quarter, these were periodic quarterly reviews we did, every quarter you have to go through all 40 funds and investigate to see whether that fund was the cheapest available fund that provided the kind of investment profile that fund provided. And then do it for the next fund, and then the next fund, and then the next fund, every quarter. That's the point that the argument Mr. Frederick is suggesting, and you won't find any source either under ERISA or trust law or DOL guidance that endorses that. Ginsburg He didn't say the cheapest fund. He said there is this stark difference between the retail and the institutional cost. Well, the only difference with respect to the particular fund, I don't disagree, is the fees, but there is still a difference between — it's not the same thing. As I said before, it's not just pushing a button to jump into the institutional share class. And one of the reasons for that is the second point I want to make generally about the duty to monitor, which I think Mr. Frederick and I fundamentally disagree on. In answer to Justice Kagan's question, I believe it was, he said it's only the most distant Supreme Court law school hypothetical that there might ever be a difference between the duty that a fiduciary has in the initial selection process and the duty that the fiduciary has with respect to whether or not to remove a fund. But that's just an imaginary kind of situation. Kagan No, I don't think he said that. I asked a very particular question relating to this particular fund, saying what kind of disruption, is there any kind of disruption that would be worth the price of holding on to a fund that is the exact same as another fund, except that it has much higher fees. And he said, as to that particular case, no, there wouldn't be. I understood the question to be more, the question and answer to be more general. But it's even better if we talk about this specific case because there's evidence on it, which tells you, by the way, that there was a trial on this and that they understood they could do it. Dave Urtel, Barbara Decker, Marvin Tong, and Daniel Esch were all witnesses submitted by Edison, subject to cross-examination, both by plaintiff's counsel and the Court, who examined them at length. All of them testified that with respect to this particular type of change, the changing from the questions by the court in particular, well, why couldn't you just switch? It seems like it's easy. Why didn't you just do it? And the reasons given were, and there was zero contradictory evidence, was that there's participant confusion when there's a switch, even if you might think it's a good one. They don't like change unless there's a performance change. There's a stability issue, and there are transition costs of any kind. Roberts Let's reflect on this investor confusion. I mean, it seems to me one sentence saying, well, we have been paying 0.3 percent, this one is 0.2 percent, that's why we're changing. They're not going to go, you know, running out in the hall screaming that there's confusion about that. But it was — it was — I mean, first of all, that's contrary. The ultimate question is answered by the evidence in this case. But the — and the evidence was it's not just, you know, it seems simple to us in retrospect that this could be easily explained. The point is, investors didn't like — or, excuse me, the participants didn't like changes in the lineup. The union had even grieved that particular change. Kagan They don't like changes, they'd rather have fees? Hacker No, but what they care about is performance, and this is performance better fees. Kagan Mr. Hacker, the day when you get from your mutual fund a notice that says, by the way, you're a preferred investor, we're switching you, it's the exact same fund under a different name, now you don't pay fees, that's a red-letter day for an investor. Hacker But that's not how it works in this situation. Again, there's a trial on this. The plaintiffs tried to make this argument. Their expert could have made exactly this argument. And what he said, he wouldn't endorse the proposition that this was the kind of thing you would catch in periodic review because it's not what you're looking for. You don't look for less expensive options. And I haven't heard an argument from the other side that says, as a general matter with respect to the breach of — with respect to the duty to monitor, your duty is limited only to whether or not there's a cheaper share class, and you don't actually have a duty to look for other cheaper options. I don't understand why that would be. If it's true that you have a duty as a matter of law and that we don't respect your fiduciary decision and your judgment because you could have switched to a cheaper share class in the same fund, it would seem to follow, as night follows the day, that you also would have a duty to switch to a different fund if it's available and provides the same investment profile. Alito With respect to all or some of these funds, did the plan qualify for the institutional shares, or did it have to get a waiver from the administrator? That was an issue tried at trial. With respect to the three funds that were added in 2002, they had to get a waiver, but the Court found, based on expert — this expert's testimony, that they would have gotten the waiver had they asked. There was not evidence with respect to these three funds because the plaintiff's expert put on a different case. He wasn't making this kind of — there's lots of inquiries. The Court kept asking, what was the eligibility rules? Couldn't you just switch as soon as you became eligible? But it turned out, if you look at the transcript, which is not very long, particularly the citations I provided last week, the plaintiff's expert went a different way. He wanted to put on a case that says, I can tell you why they should have removed the fund, identified and removed the fund. Alito But just so I understand this, you're saying that as to some funds, it was necessary to get a waiver. As to others, the record doesn't show whether it was necessary to get a waiver or not? As to the three funds that remain in the case, the record is not clear on that. There was inquiries. The Court asked about that, and there wasn't evidence, because when we came to trial, we thought the plaintiffs were arguing what Dr. Pomerantz argued, which is that the only way we ever would have had a duty to identify this problem — this was Dr. Pomerantz — their own expert's view was the only way we would have had a duty to identify this problem is if there were sufficient changes within the funds to have triggered the full due diligence. Alito But this is a very big pension plan, and it seems odd that they would — it would not have enough funds to qualify for institutional shares. These institutional shares must be — must be restricted to, I don't know what, the most gigantic investor in the world. Pomerantz Right. And again, there's evidence on this. The point there is simply that you don't look at the overall assets of the whole fund, because as to any one investment, you know, there might be only a million dollars or $500,000 invested, and so that's the — that's the threshold issue. The counterpoint is the one that their expert made, which is, yeah, but the fund can expect — the mutual fund can expect greater investments. So in my experience, he said they will often waive for precisely that reason. But that's — that's the reason. It wasn't like an automatic thing. And there isn't evidence as to what the — with the remaining funds, at least the evidence is ambiguous as to what that — Alito Well, that seems like a potentially important point, but maybe it's not. I mean, if — if the investment advisor can simply look at the criteria for getting institutional shares and see that the fund would qualify and the cost for that, those would be less, then that seems like a more obvious switch to make than if you look at the criteria and you see that you don't qualify and you would have to inquire about whether you could get a waiver. Maybe in the industry it's well known that you could obtain a waiver, but it seems like a somewhat different inquiry. Fisher But these are exactly the kinds of things you would have a trial about. You would have an expert asked about that, and there would be testimony as to whether or not a reasonably prudent fiduciary would have the kind of process that would not only ask all of the questions that we asked and looked at regularly, but also would ask, would add to that criteria, is there a cheaper alternative. And I don't think you're going to see any case law that says, well, that can be limited to is there a cheaper share class in the particular fund. The criteria would, if it allowed for that, would be is there a cheaper alternative. And the reason that doesn't exist is it would be so extraordinarily demanding on fiduciaries to constantly, on a monthly or quarterly basis, to be looking at the whole market to see whether there's a cheaper share class. That's not how anybody operates in their own life, in their own investments, in their own consumer purchases. That's not the way people behave. Particularly fiduciaries make a decision, they determine whether it makes sense at a given time, and then they look to see if anything's changed to make it imprudent. It is true that if something, as I said, is so transparently imprudent that any reasonable process would catch it, that claim can survive the statute of limitations. But they had an opportunity to bring that claim. That was the claim that they themselves described. That was the claim the Court thought they were going to bring. But instead they brought a claim based on their own experts' theory that we should have captured the problem, identified the problem, and removed the funds because of the changes within the funds that should have triggered the full due diligence review. Absent that, there's no requirement for that kind of review. Thank you. Roberts. Thank you, counsel. Mr. Frederick, four minutes. Frederick. In their post-trial brief, they said on page 13, this is docket number 381, quote, by challenging the prudence of maintaining retail share classes of the three name change funds, plaintiffs have done what the court, this is the district court, has forbidden by attempting to resurrect claims that were properly held barred by the 6-year statute of limitations. On page 15 of the petition to Penix, the Ninth Circuit said these claims have been barred by the statute of limitations. We had argued that in our court of appeals brief, that these are proper claims. We raised it in our cert petition. There is a conflict for you to resolve between the Second and the Seventh Circuits on the one hand, which say that an ongoing monitoring claim is proper under ERISA and it resets the statute of limitations, and the three circuits, led by the Ninth, the Fourth, and the Eleventh, that say you only start the limitations period from the initial selection date. So I answer his point, however. I mean, there's some force to his argument that you can't have every 3 months a sort of general market evaluation of whether something should be selected or not. And I think I disavow that, Justice Sotomayor. We're not saying that every 3 months they have to look at thousands of mutual funds. Here, there's publicly available information, it's on the Internet, you can ask the question and you will get an answer that the retail share class is more expensive than the institutional share class. Sotomayor, it says your expert would not commit that during a prudent monitoring this would have been caught. Well, Justice Sotomayor, I think that the distortion of the record, based on what the expert testified, was because the expert was concerned about running afoul of the judge's summary judgment order, which had said, I'm not hearing anything about the that that change would warrant a review of the type you would do from an initial review. Look, there are a lot of interesting fact questions. This Court does not need to resolve them. All this Court needs to do and all we ask you to do is to rule that our claims for imprudent monitoring were within the statute of limitations because they were within the 6-year period. The case should be remanded. We lost on summary judgment. We're entitled to go to trial as to whether or not there are triable issues of fact. That's all we're asking and that's all that you have to decide. If you want to decide a little bit more about what the content of this monitoring duty, you can say, look at expenses, look at performance, look at publicly available information. I'm, for one, I'm not ready to do that because I'm not a trier of fact of what a reasonable investor would say. Well, I understand Justice Kennedy was absolutely right when he said it's what a reasonably prudent investor would do. And that's the standard. That's all we've been arguing for and that may be different in different circumstances. Sotomayor, I don't, as you may know, I have just a little invested, so I don't know much, but it seems to me that in 2003, when they were made aware of the institutional class, that I would have looked at my portfolio and seen if I had retail class.  And I don't know if that was because of expenses or other things. I don't know. Well, the district court found the case easy as to the 2002 funds, but felt constrained as to the 1999 funds because they had been selected before the 6-year period of the limitations. And that's why, if this case goes back to the district court, we believe we have a strong argument that as to the imprudence of maintaining the 1999 funds within the 6-year limitations period, we have a strong argument. And just to take one point of fact, Justice Sotomayor, there was a fund added in 1999, an Allianz fund. In footnote 7 of the red brief, they say finally they got around to getting rid of it in 2011. So for 10 years, the 6 years before the lawsuit was filed, starting in 2001, in 2011, beneficiaries had to incur costs of as much as 37 percent more. Thank you, counsel. The case is submitted.